IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:14-cv-00595

| | | |
|---|---|---|
| CHRISTINE LAWSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DEFENDANT'S MEMORANDUM IN** |
| | ) | **SUPPORT OF MOTION FOR** |
| BROWN SECURITY & LEO | ) | **SUMMARY JUDGMENT** |
| MANAGEMENT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Pursuant to Federal Civil Procedure Rule 56 and Local Rule 7.2, Defendant Brown Security & LEO Management, Inc. ("Brown" or "Defendant") submits this brief in support of its Motion for Summary Judgment on the claims asserted against it and the relief sought by Plaintiff Christine Lawson ("Lawson" or "Plaintiff").

## INTRODUCTION

Plaintiff, a security guard for Brown until her termination for failure to follow a direct order in May 2014, alleges claims of discrimination and wrongful termination based on her sex and in retaliation for filing a complaint with the North Carolina Department of Labor ("NCDOL"). Contrary to these allegations, the irrefutable evidence establishes that Lawson's site supervisor, Rocky Geist, issued a memorandum to be signed by all employees; that Lawson refused to sign the memorandum and requested a meeting with Geist; that Geist offered multiple times to meet with Lawson and directly ordered her to attend; that Lawson refused to meet with Geist; and that Lawson was terminated for failing to follow the direct orders of her supervisor.

1

Lawson admits that these events occurred as outlined by Brown. Lawson has presented no evidence that her termination was motivated by, or related to, her sex. Moreover, other than the timing, Lawson admits that she has no evidence that her termination was related to the NCDOL complaint she filed two and one half months earlier. This lawsuit is based solely upon mere speculation and conjecture, which simply cannot overcome Brown's summary judgment motion. Defendant is entitled to summary judgment as a matter of law.

## STATEMENT OF UNDISPUTED FACTS

**1. Brown's prohibition on discrimination and retaliation.**

Brown is a private security agency offering licensed uniform security services and bonded security guards. (Holliday Aff. ¶ 3). Based in Villa Rica, Georgia, Brown serves a wide range of clients across the Southeast including residential communities, commercial properties, hotels, and special event services. (Holliday Aff. ¶ 3). Brown maintains and enforces policies which prohibit harassment, unlawful discrimination, and retaliation. (Lawson Dep. pp. 26-27, Ex. 3; Holliday Aff. ¶ 3, Ex. A). Lawson was aware of these policies and kept a personal copy of them. (Lawson Dep. pp. 25-27).

**2. Lawson's employment at Brown.**

In February 2012, Brown hired Lawson as a Security Officer at the Carolina Trace Community in Sanford, North Carolina. ("Carolina Trace"). (Lawson Dep. pp. 22-25). Carolina Trace is a gated residential community and the only location Brown operates in

North Carolina.[1]  (Lawson Dep. pp. 22-23; Holliday Aff. ¶ 5).  As a Security Officer, Lawson was responsible for controlling access at the community gate house, patrolling the neighborhood, assisting residents as needed, and supporting the policies and procedures of the Carolina Trace security committee.  (Lawson Dep. pp. 28-29).  Captain Rocky Geist was the site manager at Carolina Trace and Lawson's immediate supervisor. (Lawson Dep. p. 31).  Lawson worked the night shift, primarily with Corporal Michael Stratton.  (Lawson Dep. pp. 31-32).

Similar to police and military organizations, respect of the chain of command in a private security agency is critical to the protection of Brown's clients and the success of the business.  (Holliday Dep. p. 24; Holliday Aff. ¶ 6, Ex. B).[2]  Following a supervisor's orders is essential to accomplishing these goals.  (Lawson Dep. p. 82; Holliday Aff. ¶ 7). In fact, Brown has a written policy that employees may be terminated for failure to obey a supervisor's lawful orders.  (Lawson Dep. p. 26, Ex. 2; Holliday Aff. ¶ 7, Ex. C).

On December 20, 2012, Lawson was patrolling Carolina Trace in a Brown vehicle.  While making a left turn into the gatehouse parking lot, Lawson struck concrete landscaping blocks, causing $837.00 worth of damage. As a result, Lawson received a written disciplinary action for damaging company equipment.  (Lawson Dep. pp. 48-49, Ex. 7).  Pursuant to company policy, which expressly allows Brown to deduct the cost of property damage caused by employees from their wages, Brown withheld a total of

---

[1] Most of Brown's operations are in Georgia and Alabama.  (Holliday Aff. ¶ 5).
[2] Employees are assigned titles such as "captain" and "corporal" based on their position.  (Holliday Dep. pp. 24, 26-27; Holliday Aff. ¶ 6, Ex. B).

$100.00 from Lawson's February 2013 pay checks.[3] (Lawson Dep. p. 49; Holliday Aff. ¶ 17, Ex. C).

Also in February 2013, Brown issued a five percent (5%) salary reduction for all employees due to increased costs in its healthcare system. (Lawson Dep. pp. 33, Ex. 10). After the changes to all employees' wages and withholdings for Lawson's property damage, Lawson began to complain more frequently to co-workers about working for Captain Geist. (Stratton Aff. ¶ 4).

  i.  <u>Lawson's NCDOL Complaint</u>.

On March 8, 2013, Lawson filed a complaint with NCDOL regarding Brown withholding $100.00 in wages to pay a portion of the damage Lawson caused to a company vehicle. In a letter dated March 11, 2013, NCDOL notified Brown of Lawson's complaint and requested Brown respond. (Def. 30(b)(6) Dep. Ex. 7). Brown's owner and then CEO, John Brown, participated in a phone call with NCDOL during which he provided information regarding the business. Mr. Brown informed NCDOL of Brown's written company policy to withhold the cost of property damage from employee's wages. (Def. 30(b)(6) Dep. pp. 18-25, 34-35, Ex. 8-10; Holliday Aff. Ex. C). No further correspondence or discussion occurred between Brown and NCDOL at that time.[4]

  ii.  <u>Lawson's Failure to Follow Direct Orders and Termination</u>.

In May 2013, Brown began using a new employee time management system at Carolina Trace. On May 22, 2013, Captain Geist issued a memorandum to all Carolina

---

[3] Brown withheld $50.00 from Lawson's two February 2013 paychecks.
[4] There is no evidence that NCDOL and Brown had any additional contact regarding Plaintiff's NCDOL complaint until after her termination.

4

Trace employees discussing the importance of properly signing in with the new system and reading the "pass on book."[5]  (Lawson Dep. pp. 57-58, Ex. 11).  All Carolina Trace employees were to sign and return Captain Geist's May 22, 2013 memorandum (the "Memo").

At the start of her night shift on May 22, 2013, Lawson received a copy of the Memo. (Lawson Dep. p. 59).  Lawson worked with Corporal Stratton that night, and complained about the new Memo.  She stated that the last time she signed a memorandum from Captain Geist she lost five percent of wages, and she was not signing another memorandum until she spoke with Captain Geist.  (Stratton Dep. p. 21-22; Lawson Dep. p. 60).  By the end of her shift, Plaintiff had not signed the Memo. (Lawson Dep. p. 63).

As Lawson requested, on the morning of March 23, 2013, Corporal Stratton informed Captain Geist that Lawson would not sign the Memo until she spoke with Captain Geist.  (Lawson Dep. p. 62; Stratton Dep. pp. 17-18).  Captain Geist emailed Lawson at 8:59 a.m. on March 23, 2015 and directed her, "We need to meet on this.  See me at 2 pm Thursday 5-23-2013, or at 730 am, Friday 5-24-2013.  Either is fine with me. I called your phone and left a message."  (Lawson Dep. p. 64, Ex. 12).  Lawson did not respond to this email or to the voicemail message Captain Geist left for her.[6]

---

[5] The pass on book is a book kept in the security office at each Brown location.  Security Officers write notes on the events of their shift and things the following shift needs to be aware of.  Security Officers are required to read the pass on book at the start of every shift.  (Lawson Dep. p. 67).
[6] Lawson inexplicably testified that she never received Captain Geist's voicemail message or email.  (Lawson Dep. pp. 65-66).  However, she admitted that Brown had a working telephone number for her, and she could not recall a single incident of not receiving an email directed to her AOL email account.  (Lawson Dep. pp. 65-66).

Having received no response from Lawson, Captain Geist wrote Lawson a message in the pass on book. Captain Geist wrote, "Officer Lawson, meet me here at the security office Friday 5/24/13 at 7:30 to discuss memo. Captain Geist." (Lawson Dep. pp. 67-68, Ex. 13). At the start of her next shift on March 23, 2013, Lawson initialed by this note, signifying that she received it, and responded, "Captain Geist, I'm not scheduled to come into work until 10:00 p.m. I have plans with my family until then." (Lawson Dep. p. 68, Ex. 13). Lawson left work on the morning of March 24, 2013, without signing the Memo. Despite repeated orders by her superior to attend a mandatory meeting, Lawson did not meet with Captain Geist. Lawson was the only employee not to sign the mandatory Memo. (Lawson Dep. p. 81).

After Lawson refused to sign the Memo, then refused to attend a meeting with Captain Geist per his orders, Captain Geist contacted Brown's Director of Operations, Major Miles Holliday. (Holliday Dep. pp. 29-31). At that time, Major Holliday was responsible for overseeing Brown's operations, including discipline and termination of employees. (Holliday Aff. ¶ 4). Captain Geist and Major Holliday discussed Lawson's refusal to sign the Memo or attend the mandatory meeting ordered by Captain Geist. (Holliday Dep. p. 29).

Later that same morning, Major Holliday and Courtney Baker, Brown's Director of Human Resources, called Lawson regarding her refusal to sign the Memo or meet with Captain Geist. (Holliday Dep. pp. 31-33; Lawson Dep. pp. 77-79). Lawson did not want to respond to Major Holliday's questions. Instead, Lawson confronted Major Holliday with a negative attitude that was guarded, evasive, and eventually became combative.

6

(Holliday Dep. pp. 33, 35-36). As a result of Lawson's refusal to follow the direct orders of her commanding officer and her combative attitude towards Major Holliday, Major Holliday terminated Lawson's employment at that time. (Holliday Dep. pp. 33-34, Ex. 11).

Approximately two weeks after Lawson's termination, on June 3, 2013, NCDOL contacted Mr. Brown to request additional information on Brown's policies and withholding of Lawson's wages. (Def. 30(b)(6) Dep. Ex. 6). Later, the NCDOL notified Brown that it should not have withheld Lawson's wages without specific permission. Pursuant to NCDOL's instructions, Brown issued Lawson a check for the withholdings plus interest in the amount of $116.00 on June 14, 2013. (Def. 30(b)(6) Dep. pp. 25-26, Ex. 11; Lawson Dep. pp. 52-53).

It is undisputed that Brown terminated Lawson's employment after she ignored the direct orders of her supervisor. Brown acted well within its legal rights, prudently enforcing its policies. The undisputed and unanimous evidence in this case overwhelming indicates that Brown terminated Lawson's employment in a legally proper exercise of its business judgment and in accord with legitimate and non-discriminatory written and published policies.

## STANDARD OF REVIEW

Summary judgment is appropriate when the moving party establishes that there is no genuine issue of material fact to be tried by jury. FED. R. CIV. P. 56(c). While all facts and the reasonable inferences therefrom must be construed in the light most favorable to the nonmoving party, that party only creates a genuine issue of fact when it

Case 1:14-cv-00595-LCB-LPA   Document 15   Filed 06/15/15   Page 7 of 22

produces evidence that would create a reasonable *probability*, and not a mere *possibility*, of a jury finding in his favor. *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 512 (4th Cir. 1993). Indeed, Rule 56 requires the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

To establish that a genuine issue of material fact exists, the plaintiff must show that there is evidence upon which a fact finder can reasonably find a violation has occurred. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-252 (1986). Further, a Plaintiff cannot create an issue of material fact through mere speculation or building one inference upon another. *Harleysville Mut. Ins. Co. v. Packer*, 60 F.3d 1116, 1120 (4th Cir. 1995). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. In the present case, even when disputed facts are taken in the light most favorable to Plaintiff, genuine issues of material fact do not remain.

## ARGUMENT

### I. Brown did not discriminate against Lawson based on her sex.

Lawson was terminated for failing to follow the direct order of her supervisor. This decision was completely unrelated to her sex. Summary judgment is appropriate because Lawson cannot offer any evidence supporting her claims.

8

A. <u>Plaintiff cannot state a *prima facie* Title VII claim and dismissal is appropriate.</u>

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of … sex." 42 U.S.C. § 2000e-2(a). To survive a motion for summary judgment on Title VII claims, plaintiff must establish a *prima facie* case of discrimination by showing (1) that the plaintiff is a member of a protected class; (2) that she was subjected to an adverse job action; (3) the employer treated similarly situated employees outside her classification more favorably; and (4) she was qualified to do the job. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973); *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004).

To prove disparate treatment, a plaintiff must present facts showing that he or she was treated differently than similarly situated employees. *Purchase v. Astrue*, 539 F. Supp. 2d 823, 830 (E.D.N.C. 2008) (granting defendant's motion for summary judgment where plaintiff's proposed comparator was not similarly). To succeed, a "plaintiff is required to prove the defendant had a discriminatory intent or motive." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 986 (1988).

Lawson cannot establish a *prima facie* case because there is no evidence that she was treated different than any other employees based on her sex. Although she alleges male employees were treated differently than she, Lawson's deposition testimony establishes the falsity of this claim. Lawson testified that she had no knowledge of any other Carolina Trace employees refusing to sign the Memo or refusing to attend a mandatory meeting with their supervisor. (Lawson Dep. pp. 81-82). Lawson also has no

9

evidence that any male employee failed to follow the direct orders of their supervisor. (Lawson Dep. pp. 83-84, 89). Instead, she relies on alleged instances in which male employees failed to follow the employee handbook or other written policy to support her claim.[7] (Lawson Dep. pp. 84). Failing to follow a written policy is clearly different than directly refusing to follow the express orders of a supervisor. *See Purchase*, 539 F. Supp. 2d at 830 (comparison employees must be similarly situated in all relevant aspects, and the test for whether employees are similarly situated to warrant a comparison is rigorous).

Indeed, Brown is unaware of any other employee ignoring and refusing to follow a supervisor's direct orders. (Holliday Aff. ¶ 16; Lawson Dep. p. 89). If this ever occurred, the offending employee would be terminated. (Holliday Aff. ¶ 16). The truth is that Lawson failed to follow multiple direct orders by her supervisor in blatant violation of company policy. (Lawson Dep. p. 87). She can offer no similarly situated males that were not terminated for this conduct, and her allegations of sex discrimination fail. (Lawson Dep. p. 89).

Even if Lawson could somehow state a *prima facie* claim of discrimination, which she cannot, Brown may rebut this showing with evidence of a legitimate, nondiscriminatory reason for its actions. To prevail, Plaintiff must establish that Brown's articulated legitimate, nondiscriminatory reason was a pretext to mask unlawful discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802-04. To establish that an employer's "proffered reason for the challenged action [is] pretext for discrimination, the plaintiff must prove 'both that the reason was false, and that discrimination was the real

---

[7] Other than her own self-serving statements, Lawson offers no documents or testimony to substantiate these claims.

10

reason' for the challenged conduct." *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 377-78 (4th Cir. 1995) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

Lawson admits that she was made aware of the Memo, that she refused to sign the Memo, that Captain Geist ordered her to meet with him, and that she ignored these orders. (Lawson Dep. pp. 58-76, Ex. 11-13). This is a terminable offense. (Lawson Dep. pp. 26, 87, Ex. 2; Holliday Aff. ¶ 7, Ex. C). The law permits employers the right to run their businesses and discipline their employees, despite their protected category, as long as there is no causal connection between the two. *Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir. 1981) ("An employer must retain the power to discipline and discharge disobedient employees."). While Lawson obviously disagrees with that decision, Lawson cannot prove her discrimination claim by disagreeing with and second-guessing Brown's business judgment. Her mere dissatisfaction with that business decision is insufficient to defeat defendants' summary judgment motion. *See Mereish v. Walker*, 359 F.3d 330, 339 (4th Cir. 2004) (Title VII is not the appropriate vehicle by which to second-guess the wisdom or fairness of an employer's managerial decisions); *EEOC v. Clay Printing Co.*, 955 F.2d 936, 946 (4th Cir. 1992) (federal courts should not "direct the business practices of any company").

Here, Lawson cannot state a *prima facie* claim for sex discrimination, or overcome Brown's showing of a clear, nondiscriminatory reason for her termination. Plaintiff's sex discrimination claim fails, and summary judgment is appropriate.

B.  Plaintiff's N.C. Gen. Stat. § 143-422.2 claim fails.

Plaintiff also alleges that her termination was wrongful and in violation of the public policy stated in N.C. Gen. Stat. § 143-422.2. (Compl. ¶¶ 27-32). The North Carolina Supreme Court has adopted Title VII's evidentiary standards in evaluating a claim for wrongful discharge. *North Carolina Dep't of Correction v. Gibson*, 308 N.C. 131, 301 S.E.2d 78, 82 (1983). *See also Hughes v. Bedsole*, 48 F.3d 1376, 1383 (4th Cir. 1995); *Faulkner v. Tyco Elec. Corp.*, 552 F. Supp. 2d 546, 553 (M.D.N.C. 2008).

Lawson's wrongful discharge claim is based on the same facts and circumstances as her Title VII claim. "[A] plaintiff's failure to demonstrate his discrimination claim under Title VII will also result in dismissal of a North Carolina wrongful-discharge claim arising out of the same facts and circumstances." *See e.g. Efird v. Riley*, 342 F. Supp. 2d 413, 428 n. 8 (M.D.N.C. 2004) (citing *Hughes v. Bedsole*, 48 F.3d 1376, 1383 (4th Cir. 1995)). As shown above, Lawson's Title VII claim cannot survive summary judgment. For the same reasons, her wrongful termination claim based on N.C. Gen. Stat. § 143-422.2 fails and should be dismissed.

## II.  Brown did not retaliate against Lawson for her NCDOL complaint.

Lawson's claim of retaliatory discharge in violation of North Carolina's Retaliatory Employment Discrimination Act ("REDA") fails as a matter of law. REDA prohibits retaliation against an employee for, among other things, filing a claim or complaint with NCDOL over a wage and hour dispute. N.C. Gen. Stat. § 95-241. To survive summary judgment on a claim under REDA, Plaintiff must prove that (1) she engaged in an activity protected under the statute; (2) she suffered a retaliatory action;

and (3) a causal connection exists between the exercise of the protected activity and the alleged retaliatory action. *Smith v. Computer Task Grp., Inc.*, 568 F. Supp. 2d 603, 613 (M.D.N.C. 2008); *Pierce v. Atl. Group, Inc.*, 219 N.C. App. 19, 25, 724 S.E.2d 568, 573 (2012) *rev. denied*, 366 N.C. 235, 731 S.E.2d 413 (2012). Significantly, REDA does not prohibit all discharges of employees who are involved in a protected activity, it only prohibits discharges made *because* the employee exercised his rights. *Morgan v. Musselwhite*, 101 N.C App. 390, 393, 399 S.E.2d 151, 153 (1991); *Johnson v. Trustees of Durham Technical Cmty. Coll.*, 139 N.C. App. 676, 681-82, 535 S.E.2d 357, 361 (2000). The causal nexus between protected activity and the retaliatory discharge must be something more than mere speculation. *Swain v. Elfland*, 145 N.C. App. 383, 387, 550 S.E.2d 530, 534 (2001), *cert. denied*, 354 N.C. 228, 554 S.E.2d 832 (2001). If Plaintiff establishes a *prima facie* case of retaliatory discharge, the burden shifts to the Defendant to show they "would have taken the same unfavorable action in the absence of the protected activity of the employee." *Wiley v. United Parcel Serv., Inc.*, 164 N.C. App. 183, 186, 594 S.E.2d 809, 8011 (2004) (quoting N.C. Gen. Stat. § 95-241(b)).[8]

Plaintiff's REDA claim fails because she cannot establish a causal nexus demonstrating she was terminated because she filed a NCDOL complaint. Even if Plaintiff could do so, Defendant would have taken the same action in the absence of Plaintiff's protected activity.

---

[8] Courts in the Middle and Western Districts of North Carolina have applied the familiar *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting analysis to REDA claims. However, as stated in *Wilkerson v. Pilkington North America, Inc.*, 211 F. Supp. 2d 700, 707 n.4 (M.D.N.C. 2002), the North Carolian Supreme Court declined to adopt the *McDonnell Douglas* framework in *Ables v. Renfro Corp.*, 335 N.C. 209, 215, 436 S.E.2d 822, 825 (1993), opting instead to apply the statutory burden-shifting analysis outlined above. Under either analytical framework, Plaintiff's claim fails.

A. Plaintiff's REDA claim fails because she cannot show a causal connection between her discharge and her protected activity.

"To satisfy the element of causal connection, a plaintiff may present evidence of close temporal proximity between the protected activity and the adverse employment action, or a pattern of conduct." *Smith v. Computer Task Grp., Inc.*, 568 F. Supp. 2d 603, 614 (M.D.N.C. 2008). Temporal proximity in REDA cases is analyzed on a "case-by-case basis." *Id.* at 614-15. Significantly, a "grey area appears to exist for periods between one month and two and one-half months." *Id.; see also Nguyen v. Austin Quality Foods, Inc.*, 974 F. Supp. 2d 879, 883 (E.D.N.C. 2013) Moreover, temporal proximity alone does not suffice to establish a causal connection in the face of compelling evidence that the claim was <u>not</u> the motivating factor behind a plaintiff's discharge and where a plaintiff offers mere speculation. *See, e.g., Salter v. E & J Healthcare, Inc.,* 155 N.C. App. 685, 692, 575 S.E.2d 46, 50 (2003) (affirming summary judgment where the plaintiff's mere speculation failed to establish causal connection); *Pierce*, 219 N.C. App. at 25, 724 S.E.2d at 573 ("[T]he causal nexus between protected activity and retaliatory discharge must be something more than speculation."); *Green v. Dialysis Clinic, Inc.*, 159 F. Supp. 2d 228 (W.D.N.C. 2001) (granting summary judgment and recognizing a plaintiff must show discharge was "substantially related" to workers' compensation claim); *Wiley*, 102 F. Supp. 2d at 650 (granting summary judgment after failing to find an inference of retaliatory motive despite plaintiff's allegations his workers' compensation claim created an incentive to discharge him, defendants did not accept responsibility for his claim, and that he was "harassed" upon his return to work).

14

Here, it is undisputed that Lawson filed a NCDOL complaint against Brown on March 8, 2013 and that Brown received notice of this complaint via a letter dated March 11, 2013. Two months and two weeks (77 days) later, on May 24, 2013, Lawson was terminated for failure to follow Captain Geist's direct orders. The timing of Lawson's termination places it towards the end, and possibly outside, of the temporal proximity factor's "grey area". *Smith*, 568 F. Supp. 2d at 614-15 (a "grey area appears to exist for periods between one month and two and one-half months" and 70 days between filing a workers' compensation claim and termination is not a short enough time alone to establish a *prima facie* case). Outside of a close temporal proximity, Plaintiff must offer some direct evidence of retaliatory conduct. *Id.* at 614 (citing *Tarrant v. Freeway Foods of Greensboro, Inc.*, 163 N.C. App. 504, 511, 593 S.E.2d 808, 813 (2004)).

Regardless of whether the timing of Lawson's termination was in or out of the "grey area," Lawson offers <u>nothing</u> more than unsupported speculation that Brown terminated her *because* of her NCDOL claim. Indeed, Plaintiff testified that she had <u>no</u> evidence to support this claim other than the closeness in time.

Q: You've alleged in this lawsuit that you were retaliated against. How and in what ways do you believe you were retaliated against by Brown Security?

A: When I filed my Department of Labor Wage and Hour dispute on March 8th, and a very short time after that, I was terminated.

Q: So you filed your DOL dispute on March 8, you were terminated about two months later?

A: Correct.

…

15

Q:     Did anyone at Brown ever talk to you about your DOL filing related to the wage withholding?

A:     No.

Q:     Do you have any evidence that you were terminated in any way, your termination was in any way related to your wage withholding complaint?

A:     Just the time frame.

Q:     Nothing else?

A:     No.

(Lawson Dep. pp. 86-87). In contrast, the record evidence overwhelmingly demonstrates that Lawson's NCDOL complaint played no role in the discharge decision. Lawson was terminated solely as a result of her failure to follow her supervisor's direct orders.

Finally, in her Complaint, Lawson also raises claims that she was discharged because of her sex. Plaintiff's allegations that these other protected characteristics motivated her termination – which Brown denies – highlight the implausibility that her termination was *because* she filed an NCDOL complaint. *Morgan*, 101 N.C. App. at 393, 399 S.E.2d at 153 (REDA prohibits a discharge made *because* the employee exercised his protected rights).

In the face of this record evidence demonstrating Plaintiff's NCDOL claim was not a motivating factor, Plaintiff fails to meet her burden to show that her discharge was caused by her good faith institution of NCDOL proceedings. *Salter*, 155 N.C. App. at 692, 575 S.E.2d at 50. Plaintiff's REDA claim fails as a matter of law.

16

B.  Lawson's REDA claim fails because Brown would have taken the same action in the absence of protected activity.

Even if Lawson could establish a *prima facie* case, the statute provides a defense if the employer "would have taken the same unfavorable action in the absence of the protected activity of the employee."  *Smith*, 568 F. Supp. 2d at 617 (citing N.C. Gen. Sat. § 95-241(b)).  This is because filing a NCDOL complaint does not give an employee talismanic protection from discipline. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 366 (4th Cir. 1985) (retaliation laws do "not shield employees from normal sanctions for misconduct.") *overruled on other grounds by PriceWaterhouse v. Hopkins*, 490 U.S. 228 (1989);  *Cobb v. Potter*, Nos. 1:04CV128, 1:05CV300, 2006 WL 2457812 at *9 (W.D.N.C. Aug. 22, 2006) (retaliation laws do "not prohibit an employer from disciplining an employee for unacceptable conduct simply because the employee has, at some previous time, engaged in [protected] conduct").  The law permits employers the right to run their businesses and discipline their employees, despite their protected activity, as long as there is no causal connection between the two.  *Armstrong*, 647 F.2d at 448 ("An employer must retain the power to discipline and discharge disobedient employees.").

Here, the undisputed evidence is that Lawson was terminated for legitimate business reasons unrelated to her NCDOL complaint.  After Lawson refused to sign the Memo and refused to meet with Captain Geist pursuant to his orders, Major Holliday called Lawson to have a conversation regarding her conduct. (Holliday Dep. pp. 28-29).  Major Holliday asked Lawson about her failure to follow a direct order, (Lawson Dep.

17

pp. 80), and Lawson became evasive and combative. (Holliday Dep. p. 33). As a result of Lawson's refusal to follow Captain Geist's direct orders and her combative attitude towards Major Holliday, she was terminated.

Brown is aware of no other employee that has refused to follow a supervisor's direct orders, and Lawson has identified none. (Holliday Aff. ¶ 16; Lawson Dep. pp. 81-82, 84). However, if such a situation occurred, Brown would treat that employee the same as Lawson – Brown would terminate their employment. (Holliday Aff. ¶ 16). The undisputed evidence clearly shows that Lawson's termination was completely unrelated to her NCDOL complaint filed more than two months earlier.

Here, because Lawson fails to establish a causal connection, and because Brown has clearly shown it would have taken the same action in the absence of Plaintiff's protected activity, Lawson's REDA claim fails as a matter of law.

### III. Plaintiff's wrongful discharge in violation of the policy stated in the North Carolina Wage and Hour Act fails as a matter of law.

Lawson's fourth cause of action, wrongful discharge in violation of the public policy stated in the North Carolina Wage and Hour Act, fails for the same reasons as her REDA claim. This claim is nothing more than a restatement of Lawson's REDA claim. There is no basis for allowing Plaintiff to proceed with duplicative claims.

Even if Plaintiff had a separate claim for wrongful termination based on the North Carolina Wage and Hour Act, this claim cannot survive summary judgment. The North Carolina Supreme Court has adopted Title VII's evidentiary standards in evaluating a claim of wrongful discharge in violation of public policy. *North Carolina Dep't of*

*Correction v. Gibson*, 308 N.C. 131, 301 S.E.2d 78, 82 (1983). *See also Hughes v. Bedsole*, 48 F.3d 1376, 1383 (4th Cir. 1995); *Faulkner v. Tyco Elec. Corp.*, 552 F. Supp. 2d 546, 553 (M.D.N.C. 2008). Plaintiff cannot show a *prima facie* case because there is no evidence that she was treated differently than other Brown employees. And, as shown above, Lawson cannot overcome Brown's showing of a legitimate non-discriminatory reason for her termination. Summary judgment is appropriate.

### IV. Lawson is not entitled to punitive damages under any theory of recovery.

Plaintiff's substantive claims fail as a matter of law. However, even if any of her claims survive summary judgment, Lawson is not entitled to recover punitive damages and this requested relief should be summarily denied. To be awarded punitive damages on any of her claims, Lawson must establish that Brown acted intentionally, willfully, and with malice or a reckless disregard for her rights. *See Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 548 (4th. Cir. 2003) (to recover punitive damages under Title VII, plaintiff must show that employer acted with malice or with reckless indifference to their federally protected rights and provide proof "that the employer discriminated in the face of a perceived risk that its actions will violate federal law.") (citations omitted); *Sides v. Duke Univ.*, 74 N.C. App. 331, 348-49, 328 S.E.2d 818, 830 (1985) (to prove punitive damages on in a wrongful discharge claim must show that the "defendant acted to cause plaintiff's injury willfully, with malice, or with reckless disregard for plaintiff's rights."); N.C. Gen. Stat. § 95-241 (treble damages are available for a "willful" violation of the REDA statute).

19

The evidence is clear that Brown terminated Lawson for legitimate business reasons arising out of Lawson's misconduct. Lawson admits the misconduct, although she disagrees with Brown's business decision. Lawson's claims are insufficient to survive summary judgment, and she falls far short of showing that Brown acted with any malice, wrongful intent, or reckless disregard for her rights. Indeed, Lawson admits having no evidence that Brown willfully or intentionally acted with disregard to her rights as a female or her right to file an NCDOL complaint. (Lawson Dep. pp. 89-90). There are no facts supporting an award of punitive damages, and her request should be summarily denied.

## **CONCLUSION**

Even when viewing the evidence in the light most favorable to Lawson, it is apparent that no reasonable jury could conclude that she was discriminated or retaliated against based on her sex or NCDOL complaint. Accordingly, summary judgment should be granted on all counts of Plaintiff's Complaint and costs awarded to Brown.

This the 15th day of June, 2015.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

By:     /s/ J. Allen Thomas
        Robert A. Sar
        North Carolina Bar No. 22306
        J. Allen Thomas
        North Carolina Bar No. 40119
        4208 Six Forks Road, Suite 1100
        Raleigh, North Carolina 27609
        Telephone: (919) 787-9700
        Facsimile: (919) 783-9412
        Bob.Sar@odnss.com
        Allen.Thomas@odnss.com
        *Attorneys for Defendant*

21

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that the undersigned has this date electronically filed the foregoing **DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the Court's CM/ECF System, which will send notice to the following:

> Kirk Angel
> THE ANGEL LAW FIRM, PLLC
> PO Box 1296
> Concord, NC 28026
> *Attorneys for Plaintiff*

Respectfully submitted, this the 15th day of June, 2015.

> OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By:    <u>/s/ J. Allen Thomas</u>
Robert A. Sar
North Carolina Bar No. 22306
J. Allen Thomas
North Carolina Bar No. 40119
4208 Six Forks Road, Suite 1100
Raleigh, North Carolina 27609
Telephone: (919) 787-9700
Facsimile: (919) 783-9412
Bob.Sar@odnss.com
Allen.Thomas@odnss.com
*Attorneys for Defendant*

21407732.1